In the matter of the petition of ELIZABETH BOOKHOUT and others, *infants*, for the sale of their real estate.

Proceedings cannot be entertained for the appointment of a guardian to sell infants' real estate, by a justice of the supreme court, *at chambers.*

Such proceedings must be had at a special term.

The supreme court is not always open as a court of equity, except to enable the justices thereof to make such orders as the chancellor formerly made out of term.

Petitions in proceedings for the sale of infants' real estate should be addressed " To the supreme court of the state of New York."

A. C. COWLES, for the petitioners.

BALCOM, J.   Elizabeth Bookhout and others, infants, by their next friend, have presented to me, *at chambers*, a petition praying that a guardian may be appointed to sell their real estate.   The petition is directed to me by name.   It should have been directed " to the supreme court of the state of New York." (*No.* 8, *Equity Rules of* 1847.)   The important question, however, which I propose to discuss on this application, or rather motion, (*Code*, § 401,) is whether a justice of the supreme court *at chambers* can entertain proceedings and appoint a guardian for the sale of infants' real estate.   Rules 60 and 61 of the court prescribe what the petition and order shall contain ; but they are silent on the question under consideration.   Prior to the judiciary act of 1847 the law was that " any infant seised of any real estate, or entitled to any term for years in any lands, might by his next friend, or by his guardian, apply to the *court of chancery* for the sale or disposition of his property." (2 *R. S.* 194, § 170.)   The *court* and not the chancellor *in personam*, acted in the proceedings throughout. (*Id.* 194, 5, §§ 171, 177.)   Although the court of chancery was always open, (6 *Paige*, 374,) the chancellor made a rule that " no ex parte motion or petition should be heard, except on a regular motion day, or at the term, unless in a case of emergency and by special permission." (*Rule* 4, *ed.* of 1844.)

By section 16 of the judiciary act of 1847, (*Laws of* 1847, *p.* 323,) the jurisdiction and powers of the court of chancery and

of the chancellor and vice chancellors were conferred upon the supreme court and the justices thereof, so far as the same could be conferred under the constitution of 1846 and the provisions of the said judiciary act.

After the passage of said act, in July, 1847, the supreme court organized thereby, incorporated into their 147th equity rule the provision, that "no ex parte motion or petition should be heard except at a general or special term · or circuit court, unless in case of emergency and by special permission." In December following the legislature enacted that "orders in equity which have heretofore been made by the chancellor *out of term*, may be made by *any justice* of the supreme court, being or residing within one hundred miles of the county, where the solicitor or party making the application resides, at any time either in term or vacation, at chambers or at any place selected by such justice." (*Laws of* 1847, *ch.* 470, *p.* 641.) This statute does not in terms confer the power upon each justice of the supreme court to open and hold *courts* at any time, at chambers, for hearing proceedings and cases of an equitable nature ; nor does it in spirit confer any such authority. If the legislature had intended to clothe each justice of the supreme court with such extraordinary authority, language would have been used equally as explicit as they have used in reference to the county court always being open, for the transaction of business for which no notice is required. (*Code*, § 31.) The statute is that *any justice* of the supreme court may make orders in equity at any time in term or vacation, "which have heretofore been made by the chancellor *out of term :*" not that any justice can, whenever and wherever he pleases, open and hold *a court* for the transaction of business in equitable suits and proceedings which a court only can transact. There is a vast difference between the bare making of an order by a judge as such, and his holding *a court* that makes orders. In the former case his act is *in personam*, while in the latter, his person is legally invisible ; *the court* being the active machine ; the person of the judge holding a similar relation to it that the mind does to the body. The statute authorizes each *justice* to make orders in equity, in term

time or vacation, but it confers no authority on the justices to open or hold courts at chambers *for the purpose* of granting orders. When this statute was passed it was well understood that applications for the sale of the real estate of infants and the like, could only be made to the chancellor in term time or on regular motion days. This section was undoubtedly enacted to confer the same authority on *each* justice out of court, which the chancellor individually had usually exercised " out of term," and no more. If the legislature had intended the equity side of the supreme court should always be open, so that *each* justice could hold a court at any time or place that equity business should be presented to him, they would have so declared. The language used by Mr. Justice Edmonds, in reference to another statute, is applicable to this, which is, that it does not confer authority on a judge to hold *a court* "at his lodgings, in the street or even at chambers." (*Aymar* v. *Chace*, 12 *Barb*. 301. See 2 *Duer*, 565.)

The opinions touching the point under discussion in *Clark* v. *Judson*, (2 *Barb. S. C. R.* 90,) and *Garcie* v. *Sheldon*, (3 *id.* 232,) if literally followed, would compel the justices of the supreme court to carry the code about with them, and open and hold courts for the transaction of business of an equitable nature, wherever they should be found. It was not necessary to the decision of either of those cases to pass upon the point involved in this application. I therefore feel at liberty to dissent from the views of the able jurists who wrote those opinions. I am reluctant to do so, but there is no alternative left me, for their opinions fail to convince me either of their policy or soundness. Wherever the supreme court is held the clerk, crier and sheriff should attend, and to hold that the court can be opened and held by a justice at chambers, or wherever he may be, would absolve such officers from attending the court ; or it would make particular mention of them, and require them to be in readiness at all times to attend a judge whenever he should announce his intention to open or hold a court. A rule that the supreme court should be deemed always open for the transaction of equity business, would make the court too common ; and the advantage

gained thereby, of having justice brought home to every man's door, would be outweighed, by the loss of dignity and respect the court would inevitably sustain. Sound policy requires that the supreme court, like the temple of Janus, should sometimes be shut; and that its business should be done at regular terms, and that the public should have prior notice of its sittings. (2 *R. S.* 274, § 1.)

The statute imposing the duty on the *court of chancery* to make orders on applications for the sale or other disposition of infants' real estate, is made applicable to the *supreme court.* (*Laws of* 1847, *p.* 323, § 16.) The *supreme court* is the only authority recognized by statute for making orders in such cases; and unless a judge can do business *out of court,* which requires him to first open *a court,* before he can transact it, I have no power at chambers to grant this order. The court, and not a judge, must make the order.

The conclusion to which I have arrived is that the supreme court, at a special or general term, must make all orders in proceedings for the sale or other disposition of infants' real estate; and that a judge at chambers cannot open or hold *a court* for the transaction of such business; the application to me at chambers to appoint a guardian in this case is therefore denied.

